Woodruff, J.
I concur in the conclusion to which my brethren have arrived, that the damages found by the jury are excessive and not sustained by the evidence. The observations of Mr. Justice Pierrepont do not, however, fully express my views of the evidence to which he has adverted and which he regards as irrelevant.
It seems to me that irrelevancy is not a just ground of objection to evidence which, when received, “ would naturally tend to swell the verdict.” If the natural tendency of the evidence would be to swell the verdict, it must be because it would naturally tend to induce the belief that the plaintiff’s loss—i. e., the value of his horse—was greater than without such testimony the jury would have believed. It is true, that testimony may be irrelevant to the issue and yet operate to excite an undue prejudice against the defendant, and so incline a jury under the influence of passion to give exaggerated damages when the damages are, in a degree, in their discretion.
But here the inquiry was respecting the value of the injured horse, and to that end what was his market value in San Francisco. Now, if evidence that a horse was sold there for $9,000, in connection with testimony previously given, tending to show that the horse in question was as good or better than any horse *316 there, would naturally tend to induce the belief that the plaintiff's horse would have produced that sum, and so naturally tend to swell the verdict; it does not seem to me that the true ground of' objection is that it is irrelevant.
By this I do not mean to be understood as regarding the question as admissible. The witness had been in California several times from 1849.down to and including 1855. He had testified' to his knowledge of the horse market there. That he knew of sales of horses in San Francisco in 1855 and before that, and that he knew the value of horses in San Francisco. He had further testified to his acquaintance with the particular horse in question; his passage to Aspinwall on the same vessel, and his repeated examinations of the horse. The proper question, to be put to the witness was, what in his judgment was the market value of the horse in question in San Francisco, if the value in that market was admissible, as was decided when this case was before the General Term on a former occasion. The inquiry into particular sales is not a competent line of inquiry to prove market value. Such an inquiry may be proper on a cross-examination, to test the accuracy of the witness’ opinion and the grounds upon which it rests. On proof of the value of a horse, the testimony is necessarily and properly the opinion of competent men, familiar with the market, and the fair market value is what the horse will bring if offered for sale; and this is to be answered, not by proving the details which go to make up the experience of men of judgment and skill, but by requiring the witness to state his opinion as the result of the knowledge and experience he has had. What a particular horse sold for is not, therefore, a competent inquiry. It would lead to an endeavor to institute comparisons when comparisons would be dangerous, else it would involve the trial of the value of each horse and the inquiry into the particular circumstances of each sale to see whether the instance named was a fair example of the state of the market, or was a fanciful or exaggerated price obtained for peculiar reasons. And the rule is the same if the attempt were to depreciate; it is not competent to show that a sale was made for a merely nominal price, or that a useful horse was given away because a purchaser could not be found at the particular time when the owner desired, to dispose of him. One man may give his horse away, or sell him *317 for a small sum, another may give a greatly exaggerated or fanciful price for a horse that is owned by one not desiring to sell, but who is tempted by the very eagerness of the buyer to part with him for a sum greatly exceeding his value measured by a just standard. So that the only just mode of arriving at the market value is by taking the judgment of those who, from knowledge of the state of the market and the current price of the like property, embracing also a knowledge of the particular horse in question, can form an opinion of his value. If, therefore, the objection taken to the testimony had called the attention of the Court to the objections now suggested, I cannot doubt the question would have been excluded; if not, the exception would, I think, have been well taken. The correctness of this view of the competency of the question is admirably illustrated by the answer of the witness to the subsequent questions. “ The horse sold was a trotting horse; the injured horse was a running horse,” and being asked the very question counsel had endeavored to prove him competent to answer, “what was the market value of the injured horse in San Francisco? ” he says, “I would not know the market value in San Francisco.” Thus illustrating that although the witness knew what many horses had sold for at that place, and especially knew of one sale for $9,000, yet he could not judge of the value of the horse in question. If the witness could not, surety the jury ought not to be permitted to draw any inference touching the value of the horse in question from the fact of such a sale.
The objection, however, which the counsel did make to the question was groundless, and viewing the ruling of the court as merely passing upon the objection urged, and not as deciding generally upon the admissibility of the evidence, it was property overruled.
The objection was that the inquiry was not of a witness knowing the market value at the time—i. e., at the time when the horse was injured and died. But the witness did know as much of the market value then as he ever did ; he had testified that from 1849 to 1855, he was there several times; that he knew of sales in 1855 and before that; used horses all the time he was -there, and he thought he knew the market value. He went out •by the same ship that took the horse in question from New York, and went directly to San Francisco. Hero was prima facie evi *318 dence.of Ms competency to give an opinion, and his experience and knowledge came down to the very time which was to be adopted in determining the value, viz., the season when the horse was injured. True, he afterwards showed he had not sufficient knowledge to enable him to state the market value of the horse in question, but at the time of the inquiry he had shown himself prima facie acquainted writh the value at that time.
The objection made was therefore properly overruled; yet I am of opinion that the evidence was liable to the objections I have stated. If by the term irrelevant is meant that it ought not to be permitted to influence the determination of a jury nor enter into their deliberation because it does not, in judgment of law, furnish any safe guide to the determination of the question before them, then it may be called irrelevant.
Although the exception taken does not make the granting of a new trial a matter of right for the reasons above assigned, still the admission of the evidence and its objectionable character may properly be taken into view by the Court, on a motion for a new trial. The Court regard the damages as excessive, and on examination to see whether the estimate put by the jury upon the horse is the apparent result of an honest deliberation upon conflicting evidence, with nothing in the case producing an improper influence upon their minds, we find evidence received to prove that some other horse was sold for $9,000, and can see that, it being received in spite of an objection, (though a groundless one,) the jury may well have regarded the ruling of the Court as an intimation that such evidence was proper to be taken into view in estimating the value of the horse in question. Where injustice is apparently done, the admission of improper evidence which might have influenced the jury, may be regarded by the Court on a motion for a new trial, although the objecting party has not, by the form of his objection and exception,, placed himself in a situation to demand a new trial as matter of right.
I have never fully appreciated the justice of a rule which requires the party, in whose favor a new trial is ordered, to pay the costs if the error be deemed the error of the j ury • but I suppose it to be too well settled to be at present disregarded.
New trial ordered,, on payment of costs of former trial. The subsequent costs to abide the event..